### WILLIAM D. SHEW, ET AL.
(Trustees of The Southern New England Ice Co.)
vs.
### ANTHONY BROOKS

### WILLIAM D. SHEW, ET AL.
(Trustees of The Southern New England Ice Co.)
vs.
### LAWRENCE DUNN

Superior Court     Hartford County     File #53519
#53518

Present: Hon. JOHN A. CORNELL, Judge.

Spellacy & Yeomans,        Attorneys for the Plaintiffs.

## MEMORANDUM FILED APRIL 1, 1936.

CORNELL, J.  In the complaints upon which the instant applications are predicated, it is, in substance, said that the defendant in each respectively entered the employ of the corporation of which plaintiffs are trustees in reorganization, under 77B of the Bankruptcy Act, on December 14, 1928, and each continued to so remain until March 26, 1936, at which latter time, each left.

It appears that the business of The Southern New England Ice Company is the sale and delivery of ice among other places in the City of Waterbury, and that those whom it hires to make such sales and deliveries have knowledge of its customers who are numerous, and the Southern New England Ice Company has been, and the plaintiffs, trustees are now, dependent upon these whom it thus employs to retain those contacts with them which constitute, to a large extent, the good will of its business.

Each of the defendants was employed in such a capacity each having a territory allotted to him, as described in the complaints which he has covered from the date of his employment until he terminated the latter.

Each of defendants executed and delivered a written instrument at the time he entered the employ of The Southern New England Ice Company by the terms of which the latter agreed to hire him for a period of one year from its date (subject to certain reservations not presently important) upon consideration of which and the payment of wages incident to such hiring, each of defendants agreed inter alia that after leaving the Ice Company's employ he would not obtain or accept, etc., etc., the patronage of customers served by him while in the Ice Company's employ, nor engage in any branch of the business of selling and delivering ice in the territory assigned to him and covered by him while in the Ice Company's employ—for a period of three years after leaving such employment.

Aside from contending that those engagements are so un-

reasonable as to offend against our public policy and are hence void **(Samuel Stores, Inc. vs. Abrams, 94 Conn., 248)** the defendant maintains that they are no longer binding because their operative period has expired. This claim is based on the premise that the hiring was for a period of one year only and since that term ended on December 14, 1929, the three-year term during which the defendants had agreed not to solicit plaintiff's customers came to a close on December 14, 1932.

Plaintiffs contend that even though that be so, the continued operation of the restraining covenants is insured under another clause of the written agreement which reads:

"If within one year from the termination of this employment, the Party of the Second Part reenters the employ of the Party of the First Part, such employment shall be under the same terms and conditions as herein stated."

It is not necessary to decide whether this clause applies to the particular situation disclosed here, which is one where "from December 14, 1928, to March 26th, 1936, the defendant sold and delivered ice for (plaintiff Ice Company)," etc., etc. That its principal purpose has to do with other contingencies reasonably within the contemplation of the parties would not necessarily make it ineffective in so far as the events here under consideration, however, are concerned.

Reduced to its elements the defendants' claim is that while, if their respective covenants be valid, they are bound not to solicit their employer's customers or engage within the specified territory in a competing business for a term of three years after being employed in such territory for but one year, nevertheless, if they continue in plaintiff's employment in such a capacity, for a term of three years they are quite free to venture forth after the expiration of four years from the date of employment to purloin its customers and lure away the good will of its business within such territory.

Such an obviously unreasonable interpretation should not be given the agreement of the parties unless it is unavoidable

The answer to it is available in the context of the restraining covenants. These do not purport by their terms to come

into effective operation **only** at the expiration of the one-year period of employment specified in the hiring clause of the writing.

They become operative upon the defendant's "leaving any employ of the Party of the First Part" and "after leaving the employ of the Party of the First Part". This means that though the defendants respectively agreed to work for the Ice Company for a period of one year, if they left at any time **before** the expiration of that period or were discharged for cause, they would become immediately subject to the restraining provisions of their respective covenants.

And so, also, if they extended the agreed period of employment continuously beyond one year, then when it did end, their agreement to refrain from soliciting their employer's customers or competing with it, within the specified territory would immediately come into operation and remain so for the period of three years next thereafter.

This is so because while the term of employment is so fixed at one year the commencement of the period of restraint is not stated to begin at the expiration of **that** period but "after leaving the employ", whether that be at the end of the first year or the end of a later one forming such a continuous period of employment as is alleged in the complaint.

It appears that the temporary injunction prayed for in each case ought to issue under a penalty of $3500. in each case, but, as the defendants are entitled to a full hearing on the merits which not inconceivably may result in material modification or dissolution of such temporary injunction, the same shall not issue until the plaintiffs in each case have filed a bond of the form and intendment as appears in **Practice Book, p. 290,** with surety to be approved by the undersigned in the sum of $3500.

It is so ordered.